**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**CARLOS RAMIREZ,** *on behalf of himself and on behalf of all others similarly situated*,

      **Plaintiff,**

v.                                                                                          CASE NO.:

**FIRST ADVANTAGE BACKGROUND SERVICES CORP.,**

      **Defendant.**

_____/

## CLASS ACTION COMPLAINT

COMES NOW the Plaintiff, CARLOS RAMIREZ, by Counsel, and for his Class Action Complaint against the Defendant, FIRST ADVANTAGE BACKGROUND SERVICES CORP., alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action for actual, statutory and punitive damages, costs and attorney's fees brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681a–x (the "FCRA").

2. Enacted in 1970, the FCRA grants to consumers strong rights regarding information that companies like Defendant trade about them. Specifically, Congress has emphasized that "the consumer has a *right* . . . to correct any erroneous information in his credit file." S. Rep. No. 517, 91st Cong., 1st Sess. 2 at 2 (emphasis added). Through the FCRA, Congress codified such right, establishing "the *right of a consumer* to be informed of investigations into his personal life." *Id.* at 1 (emphasis added).

3. Key to such consumer oversight are the FCRA's disclosure provisions, which promote the FCRA's broader goals of fair and accurate credit reporting by requiring consumer reporting agencies ("CRAs") like Defendant to disclosure to consumers, on their request, the troves of information they collect and sell about consumers. 15 U.S.C. § 1681g. This information is commonly known as a "file disclosure."

4. Along with the information itself, CRAs are also required to reveal to consumers "the sources of the information" in consumers' file disclosures. *Id.* § 1681g(a)(2).

5. Defendant deprives consumers of their rights under the FCRA by willfully failing to provide them with complete and truthful information it sells about them to employers.

6. The Plaintiff in this case lost a job opportunity with Federal Express because Defendant supplied FedEx with a consumer report on Plaintiff falsely attributing to him a 2013 petit theft conviction, despite the fact that Plaintiff did not arrive in this country until 2015 and therefore could not have committed that offense.

7. When Plaintiff attempted to investigate the problem by requesting his FCRA file disclosure from Defendant, Defendant violated the FCRA by falsely reporting to him that it searched court and law enforcement records to obtain the inaccurate criminal-history information contained in his report when, in fact, it actually relied upon Experian Public Records for that information.

8. Experian Public Records qualifies as a "source" of information under Section 1681g(a)(2) yet, despite the statutory duty to do so Defendant does not reveal Experian

Public Records as the source. Instead Defendant reveals the source of the inaccurate record as the "Florida Department of Law Enforcement."

9. Through this purposeful deception, Defendant deprives consumers of rights afforded to them by the FCRA to obtain a copy of and review the information that the Defendant sells about them and to dispute, and to have corrected, any inaccurate or incomplete information that the Defendant is reporting. Consumers cannot exercise that right, however, because Defendant eliminates the likely source of the inaccuracy—Experian Public Records—and leaves consumers believing that the records came straight from a government source when they did not.

10. As a result of the incorrect information falsely reported by Defendant as coming from either law enforcement or judicial sources, Plaintiff and the putative class members suffered injury, including deprivation of their statutory rights, informational injuries, erroneous consumer reports containing false and misleading information, and lost job opportunities.

## JURISDICTION & VENUE

11. This Court has federal question jurisdiction over Plaintiff's FCRA claims pursuant to 28 U.S.C. § 1331. The Court has also jurisdiction under the FCRA, 15 U.S.C. §1681n and 1681p.

12. Venue is proper in the United States District Court, Middle District of Florida, pursuant to 28 U.S.C. § 1391. Plaintiff resides in this District, applied to work for in this District, and Defendant provided to the prospective employer a background check that was

used for an employment decision in this District. Plaintiff's claims therefore arose, in substantial part, in this District.

13. Defendant regularly conducts business in this District and is subject to personal jurisdiction in this district.

## PARTIES

14. The Plaintiff is a natural person and a "consumer" as defined by 15 U.S.C. § 1681a(c).

15. Defendant is a corporation authorized to do business in the State of Florida through its registered agent.

16. Defendant is a "consumer reporting agency" as defined in 15 U.S.C. § 1681(f). Defendant regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

17. Defendant disburses such consumer reports to third parties under contract for monetary compensation.

## SUPPORTING FACTS

18. The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010).

19. In furtherance of these goals, the FCRA mandates that a CRA, like Defendant here, provide consumers, upon request, all of the information sold about them to third parties

and also provide consumers with an opportunity to review and dispute any inaccuracies in their files. *See* 15 U.S.C. §§ 1681g(a), 1681i(a).

20. In fact, each CRA is required by the FCRA to provide consumers with copies of their consumer files without charge every twelve months, after a credit denial and in other limited circumstances including, when, as here, a person (or company) has taken an adverse action against a consumer because of information in the report. 15 U.S.C. § 1681g(a).

21. The term "file," when used in connection with information on any consumer, means "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." 15 U.S.C. § 1681a(g).

22. "Congress clearly intended the protections of the FCRA to apply to all information furnished or that might be furnished in a consumer report" and an FCRA "'file' denotes all information on the consumer that is recorded and retained by a consumer reporting agency that might be furnished, or has been furnished, in a consumer report on that consumer." *Cortez*, 617 F.3d at 711-12 (citing *Gillespie v. Trans Union*, 482 F.3d 907, 909 (7th Cir. 2007)).

23. The point of this requirement is transparency, as CRAs are entrusted with an abundance of information that consumers have no control over—it is collected, parsed, categorized, warehoused, and sold without consumers' consent or input into a great number of these tasks. Because so many things may occur in this context without consumers' knowledge or acquiescence, Congress imposed strict duties on CRAs to permit, among other things, consumers to learn what information is being reported about them and where it came from.

24. Plaintiff applied to work for FedEx as a driver in approximately January of 2018.

25. On February 8, 2018 Plaintiff was notified via a letter written by Defendant on behalf of FedEx that a copy of his consumer report had been procured by FedEx from Defendant and that a determination on whether he would be hired "may be based in whole or in part on the information in the report." These type of letters are commonly referred to as pre-adverse notification letters.

26. Enclosed with his pre-adverse notification was a copy of Plaintiff's consumer report obtained from Defendant. The report falsely attributed to Plaintiff a "petit theft larceny" conviction from November of 2013. Plaintiff, however, did not come to the United States to live (or even visit) until 2015 proving the November of 2013 petit theft conviction could not possibly have belonged to him.

27. Defendant states in the FedEx report that the petit theft record originated from the "Florida Department of Law Enforcement."

28. In mid-February of 2018 FedEx ultimately chose not hire Plaintiff because of the inaccurate petit theft conviction contained in the consumer report it received from Defendant.

29. After realizing the petit theft conviction attributed to him in the consumer report Defendant sold FedEx was false and to blame for him not being hired by FedEx, Plaintiff contacted Defendant by mail in approximately late June of 2018 and requested a copy of his full file disclosure.

30. Rather than responding by providing him with copy of his full file disclosure, Defendant instead wrote Plaintiff back and required him to fill out a "Full File Disclosure" form, provide proof of his identity via a Driver's License, and even proof of his mailing address with a utilities bill.

31. Plaintiff complied with Defendant's request and on August 9, 2018, Plaintiff received from Defendant what was purported to be a "full file disclosure." However, it was not. All Defendant supplied (apart from repeated copies of written summaries of Plaintiff's FCRA rights) were duplicates of consumer reports Defendant had supplied to FedEx and other employers to whom Plaintiff applied for work.

32. Nowhere did Defendant delineate other information it possessed about Plaintiff nor did it reveal Experian Public Records as its source of criminal history information.

33. Instead, any ordinary consumers, including the Plaintiff, reading the file disclosure would have believed that Defendant had actually obtained the inaccurate public record information directly from the courthouse or from a local government or State of Florida judicial agency.

34. As a result of Defendant's failure to provide Plaintiff with all of the information it maintains and/or sells about him, Plaintiff was misled concerning the information that Defendant was reporting about him to third parties.

35. The failure to identify Experian Public Records as a source of information injured Plaintiff in that it hampered his ability to learn the true source of Defendant's error,

and further prevented him from appropriately disputing and permanently correcting the inaccuracy with Experian Public Records.

36. This also harmed the Plaintiff as it prevented him from being able to cause Experian to correct its own records in order to prevent Experian from continuing to furnish such inaccuracy to other background check companies.

37. Discovery will show that Defendant purposefully withholds Experian from its file disclosures at Experian's request, as such eliminates from Experian the need to employ individuals who would process disputes of inaccurate information. If consumers to not know Experian exists, they cannot contact it to dispute inaccuracies.

38. Plaintiff suffered multiple injuries in fact as a result of Defendant's violations, including informational injury in the form of an incomplete file disclosure to which he was statutorily entitled, economic injury in the form of lost employment, and reputational injury because he was falsely accused of being a convicted thief.

39. Further, Plaintiff was deprived of all information in his file, to which he is entitled, and the opportunity to dispute and correct the inaccurate Experian Public Records information Defendant hid from him.

40. Plaintiff is humiliated and embarrassed that Defendant considers him a match or possible match to a convicted thief, and distressed over the fact that Defendant does not even provide sufficient information about what criminal's information is purportedly a match or a possible match with Plaintiff.

41. Because of Defendant's error, Plaintiff's stress level has increased dramatically because he faces the possibility of again being confused with a thief every time he applies for a job.

42. At all times pertinent hereto, the conduct of the Defendant, as well as that of its agents, servants and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal laws and the rights of the Plaintiff herein.

## PLAINTIFF'S CONCRETE HARM

43. The FCRA unambiguously requires credit-reporting agencies, such as First Advantage, to "clearly and accurately disclose to the consumer" who requests his or her credit file "the sources" that supplied any "information" to the credit-reporting agency about that consumer. 15 U.S.C. § 1681g(a)(2).

44. Disclosure of the source—the entity that gave the information to the consumer reporting agency—is vital so that certain reporting errors that originate at the source can be corrected, and so that consumers always know who is furnishing important credit information about them.

45. Such disclosure also meets the FCRA's goal of transparency in reporting, as it permits consumers the oversight they deserve with regard to information that is exchanged about them.

46. Nevertheless, and despite the clear mandate of FCRA section 1681g(a)(2), Defendant never discloses to consumers the source of the public records information that it collects and reports about them.

47. Consumers like Plaintiff have a statutory right to this category of information, and Florida courts have repeatedly recognized that the deprivation of information to which one is entitled works Article III injury. *Fosbrink v. Area Wide Protective, Inc.*, 325 F.R.D. 474, 479 (M.D. Fla. 2018); *Hargrett v. Amazon.com DEDC LLC*, 235 F.Supp.3d 1320, 1326-27 (M.D. Fla. 2017); *Graham v. Pyramid Healthcare Sols.*, Inc., No. 8:16-CV-1324-T-30AAS, 2016 WL 6248309, at *2 (M.D. Fla. Oct. 26, 2016) (citing *Church v. Accretive Health, Inc.*, 654 F. App'x 990, 994 (11th Cir. 2016) (holding that not receiving information to which one is statutorily entitled is a "concrete" injury)); *see also Nicklaw v. CitiMortgage, Inc.*, 839 F.3d 998, 1002 (11th Cir. 2016) (noting that a "plaintiff who alleges a violation of a statutory right to receive information alleges a concrete injury").

48. Defendant conceals that its sources for public record information are private vendors that supply to it information which can often be inaccurate or not up to date.

49. In this regard, Defendant is more interested in maintaining the appearance that it receives actual public records from true government sources and in protecting its low-cost private sources of public record data than in disclosing to consumers vital information that Congress required credit-reporting agencies to disclose in FCRA section 1681g(a)(2).

50. Defendant's true goal is to minimize the number of disputes directed to it and to its vendors, as responding to such inquiries from a compliance standpoint is entirely a liability to Trans Union and its business partners and creates no profit potential.

## **CLASS ACTION ALLEGATIONS**

51. Plaintiff brings this action for himself and on behalf of a class of consumers, defined as:

> All natural persons in the United States (1) who, within five years preceding the filing of this lawsuit and until the class list is prepared; (2) First Advantage Background Services Corp. obtained public-record information about from a non-governmental third-party vendor; (3) who requested from First Advantage a copy of their consumer file; and (4) to whom First Advantage provided a response that did not include any reference to its public-records vendor as a source of information within the consumer's file disclosure. Excluded from the class definition are any employees, officers, or directors of First Advantage, any attorney appearing in this case, and any judge assigned to hear this action.

52. **Numerosity**. FED. R. CIV. P. 23(a)(l). The Class is so numerous that joinder of all members is impracticable. First Advantage is one of the largest employment-background reporting companies in the world, and it runs millions of background checks every year. Plaintiff is aware from other litigation with First Advantage that it purports to provide consumers with their files on request, and it has certainly provided more than 40 disclosures during the Class period. Although the precise number of Class members is known only to Defendant, Plaintiff avers upon that the Classes number in the hundreds if not thousands.

53. **Existence and Predominance of Common Questions of Law and Fact**. FED. R. CIV. P. 23(a)(2). Common questions of law and fact exist as to all members of each class. First Advantage's process for fulfilling disclosure requests are largely automated and computerized, so the disclosure it provided Plaintiff will mirror those it provided to other consumers. Likewise, because First Advantage's system is almost entirely automated, discovery will show Plaintiff's disclosure was not provided in a way that deviated from First Advantage's standard practice for providing disclosures to all consumers. The principal questions concern whether the Defendant violated the FCRA by failing to provide complete and truthful information relating to consumers in their personal credit reports; and, whether Defendant acted willfully in violating the FCRA.

54. **Typicality**. FED. R. CIV. P. 23(a)(3)). Plaintiff's claims are typical of the claims of each class member. Again, First Advantage's process for fulfilling disclosure requests are largely automated and computerized, so the disclosure it provided Plaintiff will mirror those it provided to other consumers. Likewise, because First Advantage's system is almost entirely automated, discovery will show Plaintiff's disclosure was not provided in a way that deviated from First Advantage's standard practice for providing disclosures to all consumers. Plaintiff is entitled to relief under the same causes of action as the other members of the classes.

55. **Adequacy**. FED. R. CIV. P. 23(a)(4)). Plaintiff is an adequate representative of the Class because his interests coincide with, and are not antagonistic to, the interests of the members of the class he seeks to represent; he has retained counsel competent and experienced in such litigation; and he intends to prosecute this action vigorously. The interests of members of the Classes will be fairly and adequately protected by Plaintiff and his Counsel.

56. **Superiority**. FED. R. CIV. P. 23(b)(3). Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages suffered by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the members of the Classes individually to effectively redress the wrongs done to them. Even if the members oft he Classes themselves could afford such individual litigation, it would be an unnecessary

burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

### COUNT ONE: VIOLATION OF 15 U.S.C. § 1681g(a)
### CLASS CLAIM

57. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein. He brings this claim on behalf of the Class defined above.

58. The Defendant's failure to disclose all information in the consumer's file, including the sources of the public record information, in response to a consumer's request for this information violated 15 U.S.C. § 1681g(a)(2) as to the Plaintiff and other putative class members.

59. The conduct, action, and inaction of the Defendant were willful, rendering the Defendant liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

60. Plaintiff and the putative class members are entitled to recover costs and attorney's fees, as well as appropriate equitable relief, from the Defendant, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the violation was negligent entitling the Plaintiff and the class to actual damages in the amount of the value of their consumer disclosure.

61. As a result of these FCRA violations, the Defendant is liable to the Plaintiff and to each putative class member for statutory damages from $100 to $1,000, punitive damages, and/or actual damages, as well as for their attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

### COUNT TWO: VIOLATION OF 15 U.S.C. § 1681e(b)
### INDIVIDUAL CLAIM

62. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein. He brings this claim individually.

63. Defendant created a consumer report about Plaintiff for employment purposes, and provided that report to FedEx, but the report inaccurately stated that Plaintiff was a convicted thief.

64. The statement of Plaintiff's conviction was inaccurate, as he has no criminal history whatsoever and the crime supposedly occurred before he ever entered the United States for the first time.

65. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report it furnished regarding Plaintiff to FedEx.

66. As a result of Defendant's violation of 15 U.S.C. § 1681e(b), the Plaintiff suffered actual damages, including without limitation and by example only the loss of employment, embarrassment, humiliation, stress, and other emotional and mental distress, as well as time and money spent trying to correct and overcome these problems.

67. Defendant's conduct, actions and inaction was negligent, entitling Plaintiff to his actual damages under 15 U.S.C. § 1681o. Defendant's conduct, actions and inaction were

also willful, rendering the Defendant liable for statutory and punitive damages, as well as attorneys' fees and costs, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, the Plaintiff prays for the following relief:

1. An order certifying this case to proceed as a class action, with the Class as defined above and Plaintiff as the representative of that class and his Counsel as Class Counsel;

2. An order finding that Defendant's conduct described herein negligently and willfully violated the FCRA;

3. An order requiring Defendant to establish a common fund to compensate Class Members for their statutory damages from Defendant's violations of the FCRA;

4. An order requiring Defendant to pay Class Counsel's attorneys' fees and costs of suit;

5. Entry of an injunction requiring that Defendant reveal to consumers their public-records vendor in consumer file disclosures, and other equitable relief as may be just and proper; and

6. All other relief to which Plaintiff and the Class may be entitled.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury as to all issues so triable.

Dated this 25th day of February, 2019.

                        Respectfully submitted,

                        */s/ Brandon J. Hill*
                        _____
                        **BRANDON J. HILL**
                        Florida Bar Number: 0037061
                        **LUIS A. CABASSA**
                        Florida Bar Number: 053643
                        **WENZEL FENTON CABASSA, P.A.**
                        1110 N. Florida Avenue, Suite 300
                        Tampa, Florida 33602
                        Main Number: 813-224-0431
                        Direct Dial: 813-337-7992
                        Facsimile: 813-229-8712
                        Email: bhill@wfclaw.com
                        Email: lcabassa@wfclaw.com
                        Email: twells@wfclaw.com
                        ***Attorneys for Plaintiff***